## STATE v. GUST ROTHI.[1]

April 28, 1922.

No. 22,720.

Criminal law — complaints of imbecile inadmissible as res gestae.

Where the victim of a criminal assault is so much of an imbecile that she cannot be used as a witness, her complaints to others are inadmissible as substantive evidence of the corpus delicti, unless such complaints are a part of the res gestae. The complaints or declarations of the injured girl the day following the alleged crime *held* not admissible as res gestae.

Defendant was indicted by the grand jury of Big Stone county charged with the crime of carnal abuse of a female child of the age of 16 years, tried in the district court for that county before Flaherty, J., who at the close of the state's case in chief and when the state rested denied defendant's motion to dismiss the action, and a

[1]Reported in 188 N. W. 50.

jury which found him guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Reversed.

*A. B. Kaercher* and *Howard Babcock*, for appellant.

*Clifford L. Hilton*, Attorney General, *James E. Markham*, Assisttant Attorney General, and *Ray G. Farrington*, County Attorney, for respondent.

HOLT, J.

The defendant was convicted of ravishing a 16-year old girl named Regna. He appeals from the order denying a new trial.

The girl and her parents lived on a farm near Clinton, Minnesota. In the afternoon of October 28, 1920, she was left at home alone, while her parents with two small children attended a funeral some five miles away. Shortly after four o'clock her sister Myrtle, 14 years old, and a youngter sister came home from school. The state claimed that the offense was perpetrated between three and four o'clock. Regna was so much of an imbecile that no attempt was made to use her as a witness, and the only evidence to prove the corpus delicti came from a physician, who made a physical examination of the girl the next day, and from Myrtle and Regna's mother. The physician frankly admitted that the conditions he found might have been produced by other causes than the criminal act of a man, and also that there was evidence of an injury which must have had its origin prior to the twenty-eighth. The importance of the testimony of Myrtle and Regna's mother to a conviction is therefore apparent, and, if any material part thereof was erroneously received, defendant did not have that fair trial which the law assures him, and a new trial must result. Defendant, selling Watkins Remedies carried in a Ford runabout, called at Regna's home during the afternoon in question, and also at other homes in the neighborhood, as had been his custom for some time before. He admitted that he spoke to Regna at the door, but denied that he entered the house or wronged the girl in any respect.

The rule as stated in 3 Greenleaf, Evid. § 213, is: "Though the prosecutrix may be asked *whether she made complaint of the injury,*

and when and to whom, and the person to whom she complained is usually called .to prove that fact; yet the particular facts which she stated are not admissible in evidence except when elicited on cross-examination, or by way of confirming her testimony after it has been impeached. On the direct examination, the practice has been merely to ask whether she made complaint that such an outrage had been perpetrated upon her, and to receive only a simple yes or no. Indeed, the complaint constitutes no part of the *res gestae*: it is only a fact corroborative of the testimony of the complainant; and, where she is not a witness in the case, it is wholly inadmissible." Baccio v. People, 41 N. Y. 265; People v. McGee, 1 Denio (N. Y.) 19.

Wigmore, Evidence, §§ 1134-1140, analyzes the rule and its exceptions at length. We think therefore, in this case, where Regna was not called as a witness, her declarations to Myrtle and her mother were inadmissible, unless they come within the res gestae rule.

It is difficult to classify the statements which Regna first made to Myrtle as part of the res gestae, for they seem to partake more of the nature of a casual relation of a past occurrence than of a spontaneous outburst concerning an injury from which she was then smarting. Still more removed from the res gestae appears to be the further account of what Regna told, a while after her first statement, when the girls were doing their chores. Myrtle was allowed to testify to this. But, whatever may be thought of the admissibility of Myrtle's testimony, clearly the declarations Regna made to her mother the next day do not come under the head of res gestae. The mother, properly enough, was permitted to testify that, after the return from the funeral, Regna appeared distressed and acted as if afraid of her; that she did not eat any supper; that she was feverish; that she was restless during the night and screamed in her sleep two or three times, and that she did not eat any breakfast until after her two sisters went to school. Thereupon follow these questions and answers relative to what occurred thereafter between Regna and her mother, viz: Ques. "Did you then have any speech with your daughter?" Ans. "Yes, sir, I did. * * * I asked her what was the matter. I wanted to know what it was." Ques. "What

complaint, if any, did she make?" Ans. "She said that the Watkins man abused her and insulted her." Ques. "You have stated that she made complaint to you. You may now state what she complained had happened to her." Ans. "She said the Watkins man had intercourse with her, and if she told her mother, her mother would break her neck." Defendant objected to the questions and answers on the grounds that Regna had not testified, that the corpus delicti had not been proven, and that the details of what Regna complained of could not be given.

We think the objections well taken. The statements of Regna then made cannot well be considered as a part of what occurred the day before. In State v. Alton, 105 Minn. 410, 117 N. W. 617, 15 Ann. Cas. 806, declarations made by the woman within less than one hour after the crime was perpetrated upon her were held not to be a part of the res gestae. The court in Oleson v. State, 11 Neb. 276, 9 N. W. 38, 38 Am. Rep. 366, held complaints made the day after the outrage inadmissible. Cases where declarations of the victim have been made so close to the commission of the offense as to be admissible as part of the res gestae are given in the third subdivision of the note to Elmer v. State, 2 A. L. R. 1519. What is part of the res gestae in cases of this sort must be controlled by the same considerations that govern in other cases, and these are pointed out quite fully in Lambrecht v. Schreyer, 129 Minn. 271, 152 N. W. 645, L. R. A. 1915E, 812, and Roach v. Great Northern Ry. Co. 133 Minn. 257, 158 N. W. 232. In those jurisdictions where evidence of complaints is received, even though the victim of the outrage is unable to testify, the rule is that details, such as here given by Myrtle and the mother, cannot be given. See cases under subdivision 2 of the note to Elmer v. State, supra.

In Michigan an exception to the rule against the admission of hearsay evidence has been stated to exist where an abused child is of such tender years that she cannot be used as a witness. In such a case it is held that her declarations to third persons may be received as substantive evidence of the corpus delicti. The courts of that state seem to base the exception on the ground of necessity and are also inclined to regard such declarations as part of the res

gestae without regard to the lapse of time between the occurrence and the declarations. An extreme case is that of People v. Gage, 62 Mich. 271, 28 N. W. 835, 4 Am. St. 854, where a mother was permitted to give the details of a complaint made by a 16-year old girl more than two months after the commission of the crime. Apparently, it is justified as being a part of the res gestae, because the girl, during that whole time, was under dread of the punishment which the accused told her she would receive if her father learned what had happened to her. It is to be noted, however, that the girl testified in that case. But, evidently, that court has seen the danger of an undue extension of the res gestae rule, for, in People v. Marrs, 125 Mich. 376, 84 N. W. 284, it was held that declarations made by a weak-minded girl within a week after her violation could not be admitted as a part of the res gestae.

We think it dangerous and at variance with our criminal procedure to admit in evidence, as substantive proof of a crime, the declarations and statements obtained from a child so immature or imbecile of mind that she cannot be placed on the witness stand. Regna's declarations, as testified to by the mother, indicate either that the mother failed to accurately relate what Regna told her, or else that she is not the imbecile the mother's testimony would represent her to be.

In view of another trial it is not amiss to say that the intemperate language of counsel, to which exception was taken, ought not to have been used in addressing the jury. The fault found with an expression in the charge of the learned trial court may so readily be obviated that there is no need to comment thereon.

For the errors in the reception of the evidence referred to there must be a new trial.

Order reversed and a new trial granted.

HALLAM, J. (dissenting in part.)
In my opinion the statements to Myrtle were properly received as part of the res gestae.